WILLIAM E. FULLER, Judge of Probate, *vs.* ELIJAH M.
WILBUR, administrator.

SAME *vs.* ELIJAH M. WILBUR.

Bristol.    October 25, 1897. — March 28, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Life Estate determinable upon Marriage — Agreement to dispense with Inventory
and Account — Bond — Surety — Executor.*

A testator gave by will to his wife "all my real and personal estate of whatever
name, for her sole use and benefit so long as she remains my widow, except the
legacies to my children," which were ten dollars to each child. *Held*, that the
wife took a life estate determinable on her marrying again.

An agreement signed by the testator's heirs at law authorizing and requesting the
executrix, who was his widow, "to proceed in the administration of said estate
without taking or filing an inventory thereof, and without rendering any account
of such administration in Probate Court," is revocable, and having been revoked
it does not operate to release the sureties upon her bond.

By reason of the death of an executor, a suit against his administrator cannot be
joined with a suit against a surety on his bond as executor.

TWO ACTIONS OF CONTRACT, brought by George M. Woodward, administrator *de bonis non* with the will annexed of
Elijah Wilbur, the first against the administrator of the estate
of Pella L. Wilbur, who was executrix of the will of Elijah
Wilbur, and the second against a surety upon her bond, which
bond was given to the plaintiff as judge of the Probate Court
for the County of Bristol.

The material portions of Elijah Wilbur's will were as follows: "First, I give and bequeath to my children, Elijah M.
Wilbur, Zibeon W. Wilbur, Mary L. Wilbur, and Pella L. Wilbur, ten dollars each, to be paid to them by the executrix in six
months after my decease.    Second, I give and bequeath to my
beloved wife, Pella L. Wilbur, all my real and personal estate
of whatever name, for her sole use and benefit so long as she
remains my widow, except the legacies to my children.    Third,
I ordain and appoint my wife, Pella L. Wilbur, as executrix of
this my last will and testament."

Hearing before *Field*, C. J., who reserved the case for the

consideration of the full court. If the actions could be maintained, judgment was to be entered in each case for the penal sum of the bond, and the amount for which execution should issue was to be referred to an assessor, with such directions, if any, as the full court might think proper to give. The facts appear in the opinion.

The case was argued at the bar in October, 1897, and afterwards was submitted on briefs to all the justices.

*C. A. Reed,* for the plaintiff.

*W. H. Fox,* for the defendant.

MORTON, J. The first question in these cases is, What interest did the widow of Elijah Wilbur take under her husband's will? There is some ground perhaps for saying that, with the exception of the legacies to the children, she took the entire estate absolutely and in fee, subject to be devested of it if she married again; but we think that the better construction, and the one which is according to the weight of authority here and elsewhere, is that she took a life estate determinable on the happening of that event. *Knight* v. *Mahoney,* 152 Mass. 523. *Loring* v. *Loring,* 100 Mass. 340. *Dole* v. *Johnson,* 3 Allen, 364. *Mansfield* v. *Mansfield,* 75 Maine, 509, 512. *Nash* v. *Simpson,* 78 Maine, 142, 147. *Evans's appeal,* 51 Conn. 435. *Cooper* v. *Pogue,* 92 Penn. St. 254, 257. 4 Kent Com. 26, 27. 2 Bl. Com. 121. 1 Washb. Real Prop. (5th ed.) 63.

The words " so long as she remains my widow " imply a continuance of the estate during widowhood, and no longer; and at most it could not extend beyond her life. Further, the estate is given to her for her " use and benefit," which are apt words in connection with a life estate, but which hardly would be used where the intention was to give an absolute estate, and to render it liable to be defeated on the happening of some future event. Neither are there any words which give her a power of disposition over the estate. It is true that an unqualified gift of the use, income, or improvement of personal property vests the property absolutely in the taker. But the gift here was not unqualified.

The next and remaining question relates to the effect of the paper which was signed by the heirs at law authorizing and requesting the executrix, who was the widow, " to proceed in the administration of said estate without taking or filing an inven-

tory thereof, and without rendering any account of such administration in Probate Court." We think that this exonerated the executrix from taking and filing an inventory, and from returning an account in the Probate Court so long as it continued in force, and that neither she nor the sureties on her bond would be liable for breaches of it occurring in the mean time in respect to such matters. But it did not transfer to her the rights of the heirs in the estate, or relieve her from the obligation to account for it if they at any time required her to do so, or justify her in dealing with the estate in any other particular in a manner not authorized by law. The agreement was revocable, and she was bound to render an account when required by the Probate Court to do so, on the petition of any of the parties interested. She failed to render a satisfactory account when so required, having previously received notice from the executor of one of the heirs that the agreement was revoked, and thereby committed a breach of her bond. Whether she also committed a breach in failing to administer the estate according to law, it is not necessary now to consider.

By reason of the death of Pella L. Wilbur a suit against her administrator could not be joined with a suit against a surety on her bond. *New Haven & Northampton Co.* v. *Hayden,* 119 Mass. 361. *Cochrane* v. *Cushing,* 124 Mass. 219. And we do not see how the agreement authorizing the executrix to proceed without filing an inventory or rendering an account operates to relieve the surety from liability on the bond. He was a party to the agreement himself. Further, the agreement was not a binding one. As already observed, it was revocable, and the executrix could have been compelled to render an account or file an inventory at any time when any of the parties interested saw fit to apply to the Probate Court to order her to do so.

In accordance with the terms of the report, there must be judgment in each case for the penal sum of the bond, and the cases must be sent to an assessor to determine the amount for which execution shall issue.

*So ordered.*