**Henry M. STEPHENSON, Executor of the Estate of Jane M. Stephenson, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. A. No. 9515.**

United States District Court
W. D. New York.

Feb. 8, 1965.

Jaeckle, Fleischmann, Kelly, Swart & Augspurger, Buffalo, N. Y. (Albert R. Mugel, and Irving L. Innerfield, Buffalo, N. Y., of counsel), for plaintiff.

Louis F. Oberdorfer, C. Moxley Featherston, David A. Wilson, Jr., Moshe Schuldinger, Dept. of Justice, Washington, D. C., and John T. Curtin, U. S. Atty., Buffalo, N. Y., for defendant.

HENDERSON, District Judge.

This action for a refund of estate taxes is brought by Henry M. Stephenson as Executor of the Estate of Jane M. Stephenson. Sought to be recovered is $62,-940.65, representing estate taxes and interest assessed against and collected from the estate.

The issue is whether certain securities, valued at $196,637.33 on May 5, 1957, were properly included by the Commissioner in the estate of Jane M. Stephenson or whether they should have been included in the estate of Henry L. Stephenson.

Henry L. Stephenson, the husband of Jane M. Stephenson, died a resident of Erie County, State of New York, on September 22, 1930. The aforementioned securities were a part of his estate and under the terms of his Will passed to his wife. The second article in his Will provided:

"All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated, of which I may die seized or possessed, or to which I am entitled at the time of my decease, I give, devise and bequeath unto my wife, JANE MILLER STEPHENSON, so long as she remains unmarried." [1]

The Government takes the position that under this Will Jane M. Stephenson took a fee simple interest subject to defeasance only in the event of remarriage. The taxpayer claims that she took only a life estate.

Supporting the taxpayer's construction is a decree of the Surrogate's Court, Erie County, dated April 23, 1958. In pertinent part that decree provides:

"1. That it was the intention of Henry L. Stephenson, in and by Article Second of his Last Will and Testament to give his residuary estate unto his widow, Jane M. Stephenson, for and during her lifetime or until she should remarry.

"2. That said Article Second of the Last Will and Testament of said Henry L. Stephenson vested a life use of his residuary estate in his widow, Jane M. Stephenson, subject to be divested upon her remarriage, and that said widow never remarried.

"3. That it was the intention of Henry L. Stephenson in and by Article Second of his Last Will and Testament to give unto his children, Henry M. Stephenson, Jane S. Burgess and Laura S. Kelly, a vested remainder in his residuary estate, subject to the aforesaid life use in Jane M. Stephenson.

"4. That said Jane M. Stephenson died on May 5, 1957 without having remarried and thereupon her son, Henry M. Stephenson and her daughters, Jane S. Burgess and Laura S. Kelly each became the owner of and entitled to receive one-third of the residuary estate of Henry L. Stephenson."

■ Ordinarily the state court's determination of the property rights involved would be conclusive for federal tax purposes. An exception arises, however, if the state court's determination was obtained by collusion.[2]

The Government argues that the Surrogate's decree in this case is not binding because it was obtained in a non-adversary proceeding. Further, in the Government's view the result reached by the Surrogate is at odds with settled New York law.

With respect to non-adversary proceedings, the Third Circuit Court of Appeals in Gallagher v. Smith, 223 F.2d 218, 224–225 (1955) observed:

"Whatever may be the case with respect to consent decrees, however, it is clear that if the question at issue is fairly presented to the state court for its independent decision and is so decided by the court the resulting judgment if binding upon the parties under the state law is conclusive as to their property rights in the federal tax case, regardless of whether they occupied adversary positions in the state court or were all on the same side of the question. It is clear, as sug-

---

1. The Will of Henry L. Stephenson is set forth in full in the appendix to this opinion.

2. See Peyton's Estate v. C. I. R., 323 F.2d 438 (8th Cir. 1963) and cases cited therein.

gested by the Supreme Court in the Freuler and Blair cases, that a state judgment obtained by collusion to defeat a federal tax need not be given conclusive effect in a suit in a federal court involving that tax. And the non-adversary character of a state suit is undoubtedly relevant as evidence of such collusion. But we think that the fact that the parties all favored the same result in the state court is relevant only so far as it is evidence of collusion and should not in and of itself vitiate in the federal court such conclusive effect as the state law gives to the judgment with respect to the property rights determined by it. For if in the absence of fraud such a judgment does determine the rights of the parties in the property they must thereafter live with it so far as their enjoyment of the property is concerned. It is certainly logical, therefore, that such taxation as is based solely upon the ownership of the property should follow such a judgment.

"Furthermore we think that our conclusion is soundly based in public policy. For it is quite common and highly commendable for all the members of a family group interested in a decedent's will to take a common view as to their rights under it, thus promoting family harmony and preventing that unseemly and disturbing spectacle, a family fight over a deceased relative's property. It is certainly quite proper for the persons interested in a trust estate thus frankly to express to the court which has jurisdiction a common view as to the correct legal solution of any questions which exist as to their rights in the trust. If the questions are fairly posed to the court and the tribunal is left free to decide them according to its own independent judgment it should not be necessary for the parties to take formal adversary positions and engage in legal shadow boxing in order

that the judgment of the court should have conclusive effect, taxwise as well as propertywise."

Although the Government argues that other courts have applied a less severe test, the court believes that, in general, these cases turn not upon less respect for the competence of state tribunals in nonadversary proceedings, but upon findings that the issues had not been fairly and squarely presented to and resolved by the state courts.

In the present case, putting aside the question of estate taxes, it is clear that the beneficiaries gained equally under either Will. And while resolution of the initial dispute among the parties may have been aided by tax considerations, and such considerations therefore ultimately may have contributed to the urging of a common view before the Surrogate, these facts alone do not compel a finding of collusion.

This is particularly true in light of the evidence relating to an earlier Surrogate's proceeding and the subsequent actions of Jane M. Stephenson under the Will of her husband. While the Government argues that this evidence is irrelevant and immaterial, it demonstrates that the position originally taken by one beneficiary and later acceded to by all, was not newly conjured to avoid the payment of estate taxes but was one which had been recognized and followed for more than a quarter of a century. Furthermore, although accord had been reached among the parties, completion of the 1958 Surrogate's proceeding was required to assure that the executor of Jane's estate could not be exposed to personal liability under Title 31 U.S.C. § 192.

Accordingly, briefs taking a common view were submitted to the Surrogate. The Surrogate, however, was fairly advised of the issues involved. In fact the principal authority against the parties' view (now relied upon by the Government in attacking the result reached by the Surrogate) was called to the court's attention. There is no reason to believe

that the Surrogate did not give the matter the required attention and consideration. These *circumstances certainly* do not warrant a finding that the decree was collusive.

Because the Government views the Surrogate's opinion in In re Feldhus' Will, 165 Misc. 122, 300 N.Y.Supp. 799 (Surr.Ct.1937), aff'd, 254 App.Div. 902, 6 N.Y.S.2d 508, reargument denied, 255 App.Div. 780, 7 N.Y.S.2d 109, aff'd, 280 N.Y. 568, 20 N.E.2d 17, as controlling authority directly contrary to the result reached by the Surrogate in this case, the point deserves some mention.

■■■ It should be noted that the Feldhus case, supra, was decided several years after the death of Henry L. Stephenson. To the extent that the state court found that decision to be a departure from the law existing at the time of the testator's death, it was required to follow the earlier precedents. In re Gaffken's Will, 197 App.Div. 257, 188 N.Y.S. 852 (2d Dep't 1921), aff'd, 233 N.Y. 688, 135 N.E. 971 (1922). Several earlier New York cases,[3] cases in a number of other jurisdictions,[4] and at least one prominent text[5] support the conclusion reached by the Surrogate in this case. In view of these precedents the court does not believe that the result reached by the Surrogate inferentially can provide any basis for a finding of collusion.

■■■ Finding that the decree of the Surrogate was not procured in a collusive proceeding, that decree is binding upon this court and the plaintiff is entitled to

judgment. Submit judgment on five (5) days' notice.

So ordered.

## APPENDIX
## LAST WILL AND TESTAMENT

I, HENRY LUCIEN STEPHENSON, of the City of Buffalo, County of Erie and State of New York, do hereby make, publish and declare this, my Last Will and Testament, in manner and form following:

*FIRST*: I direct that all my just debts and funeral expenses be paid as soon after my decease as conveniently can be done.

*SECOND*: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situated, of which I may die seized or possessed, or or to which I am entitled at the time of my decease, I give, devise and bequeath unto my wife, JANE MILLER STEPHENSON, as long as she remains unmarried.

*THIRD*: I make no provision herein for any of my children nor for any child of mine who may hereafter be born, except as provided in paragraphs numbered Fourth and Fifth hereof, relying upon my said wife to care for their support, maintenance and education as she deems best, it being my wish and intention that any child who may hereafter be born shall share equally with those now in being, according to the provisions hereof.

*FOURTH*: In case my said wife, JANE MILLER STEPHENSON, shall remarry, I hereby give, devise and bequeath one-third of all of my said proper-

3. Crosby v. Wendell, 6 Paige 548 (1837); Matter of McClure, 136 N.Y. 238, 32 N.E. 758 (1892); Rausch v. Rausch, 64 N.Y. St.Rep. 490, 31 N.Y.S. 786 (Sup.Ct. 1895); Matter of Schriver's Estate, 221 N.Y. 268, 116 N.E. 995 (1917); In re Clickman's Will, 116 Misc. 540, 190 N.Y.S. 762 (1921).

4. Mulberry v. Mulberry, 50 Ill. 67 (1869); Rose v. Hale, 185 Ill. 378, 56 N.E. 1073 (1900); Sayer v. Humphrey, 216 Ill. 426, 75 N.E. 170 (1905); Cowman v. Glos, 255 Ill. 377, 99 N.E. 586 (1912); Koonz v. Kempy, 142 Iowa 337, 120 N.W. 976

(1909); Brunk v. Brunk, 157 Iowa 51, 137 N.W. 1065 (1912); Mansfield v. Mansfield, 75 Me. 509 (1883); Knight v. Mahoney, 152 Mass. 523, 25 N.E. 971 (1890); Fuller v. Wilbur, 170 Mass. 506, 49 N.E. 916 (1898); Peck v. Griffis, 148 Mich. 682, 112 N.W. 722 (1907); Brook's Will, 125 N.C. 136, 34 S.E. 265 (1899); Sink v. Sink, 150 N.C. 444, 64 S.E. 193 (1909); Cooper v. Pogue, 92 Pa. 254 (1879); Hibbits v. Jack, 97 Ind. 570 (1884); Fenster v. Bierman, N.J.Ch., 99 A. 529 (1916).

5. 2 Blackstone's Commentaries § 121.

ty to her, absolutely and forever, and the remaining two-thirds of my property, I hereby give, devise and bequeath unto

s/ H. L. Stephenson

2.

my children, share and share alike; and in the event that any child of mine shall be dead leaving lawful issue him or her surviving, then the share said deceased child of mine would have been entitled to if living, according to the terms hereof, shall be given, share and share alike, to the said children of such deceased child of mine.

FIFTH: If my said wife, JANE MILLER STEPHENSON, shall predecease me, I hereby devise and bequeath all of my said estate to my children living at the time of my decease, share and share alike; and in the event that any child of mine shall be dead leaving lawful issue him or her surviving, then the share said deceased child of mine would have been entitled to if living, according to the terms hereof, shall be given, share and share alike, to the said children of such deceased child of mine.

SIXTH: In case my said wife, JANE MILLER STEPHENSON, shall predecease me and there are no children of mine living at the time of my decease, and no children of deceased children, I hereby give, devise and bequeath all of my said property, except that portion thereof hereinafter devised and bequeathed by Article numbered Eighth hereof, to my brother, WILLIAM COWELL STEPHENSON, and to my sister, NELL STEPHENSON BOYD, wife of John Otto Boyd, both of Roanoke, Virginia, share and share alike.

SEVENTH: In the event that either my said brother, WILLIAM COWELL STEPHENSON, or my said sister, NELL STEPHENSON BOYD, shall predecease me, leaving children him or her surviving, the share which my said brother or sister would have been entitled to receive if living, shall be paid to such issue, share and share alike.

s/ H. L. Stephenson

3.

EIGHTH: In case my said wife, JANE MILLER STEPHENSON, shall predecease me and there are no children of mine living at the time of my decease, and no children of deceased children, I give, devise and bequeath unto my brotherinlaw, REVEREND LEWIS S. G. MILLER, formerly of Winchester, Virginia, now of Fukuoka, Japan; to my sisterinlaw, MRS. MARY MILLER AGNEW, of the City of Charleston, South Carolina; and to my sisterinlaw, MRS. LAURA MILLER BELL, of the City of Winchester, Virginia, share and share alike, all of the property which I shall have received under the last will and testament of my said wife, JANE MILLER STEPHENSON, or which I have received in any other manner from her or from her estate, exclusive of any property which she may have previously received from me by gift or otherwise. The property hereby given, devised and bequeathed shall include only such property as I shall have received from my said wife, JANE MILLER STEPHENSON, which she has or may have previously inherited from any of her blood relatives.

NINTH: In the event that the said REVEREND LEWIS S. G. MILLER, MRS. MARY MILLER AGNEW or MRS. LAURA MILLER BELL shall predecease me, leaving children him or her surviving, the share which the said deceased person would have been entitled to receive if living, shall be paid to such issue, share and share alike.

TENTH: It is my wish that in the care and management of my estate, my said wife, JANE MILLER STEPHENSON, shall consult and advise with my brother, WILLIAM COWELL STEPHENSON, of Roanoke, Virginia, and in case he may predecease me, then she shall consult with and be advised by some disinterested party of her selection other than the husband of JANE MILLER STEPHENSON, in case she shall have remarried.

s/ H. L. Stephenson

4.

*ELEVENTH*: The devises and bequests herein made to my said wife, JANE MILLER STEPHENSON, are intended and hereby declared to be in lieu of her dower and other interest in my estate and property.

*TWELFTH*: I hereby nominate and appoint my said wife, JANE MILLER STEPHENSON, guardian of the person and the estate of those of my children who shall be minors at the time of my decease. I hereby expressly waive the giving of any security by her for the faithful discharge of her duties as such guardian.

*THIRTEENTH*: I hereby nominate and apoint my said wife, JANE MILLER STEPHENSON, executrix of this, my Last Will and Testament, with full power to sell at public or private sale any real estate belonging to me at the time of my decease and to execute all deeds or other instruments that may be necessary or requisite to vest title absolutely and in fee simple in the purchaser or purchasers of the same, and I also authorize her to compromise claims which may be made against my estate or which I may have against others in the same manner as I could do were I living, and she shall not be liable for errors in judgment, if any, in making such compromise.

*FOURTEENTH*: I hereby revoke all former wills by me made.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 14th day of March, in the year One Thousand nine hundred and twenty-one.

s/ H. Lucien Stephenson    (Seal)

s/ usual signature H. L. Stephenson

WE, the undersigned, CERTIFY that on this 14th day of March, in the year one thousand nine hundred and twenty-

5.

one, HENRY LUCIEN STEPHENSON exhibited to us the foregoing instrument in typewriting on four sheets, inclusive of this, and in our presence signed his name at the bottom of each of the first three sheets and signed and sealed the same at the end of said instrument, and published and declared the same as and for his Last Will and Testament; and we, at his request, in his presence, and in the presence of each other, have hereunto subscribed our names as witnesses thereto.

s/ Edward W. Hamilton residing at Buffalo, N. Y.

s/ Thomas C. Rowley residing at Buffalo, N. Y.

<u>residing at</u>